# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

MICHAEL L. O'GUINN, )
)
        Plaintiff, )
)
v. ) Case No. CIV-06-332-KEW
)
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
)
        Defendant. )

## OPINION AND ORDER

Plaintiff Michael L. O'Guinn (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and REMANDED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do

his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

## Claimant's Background

Claimant was born on July 17, 1966 and was 39 years old on the date of the ALJ's decision. He completed his high school education. Claimant previously worked as a servicer, automobile washer, security guard, ride operator, and construction worker. Claimant alleges an inability to work beginning September 15, 1995, due to degenerative disk disease of the lower back, depression, and anxiety.

## Procedural History

On June 23, 2003, Claimant filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and Title XVI of the Social Security Act (42 U.S.C. § 1381, *et seq.*). Claimant's

applications for benefits were denied initially and upon reconsideration. Claimant appeared at a hearing before ALJ W. Howard O'Bryan on July 21, 2005. By decision dated September 21, 2005, ALJ O'Bryan found that Claimant was not disabled during the relevant time period and dismissed his application seeking disability insurance benefits due to Claimant's date last insured status expired on December 31, 1998. The Appeals Council denied Claimant's request for review on June 20, 2006. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant's medical conditions were severe, they did not meet a Listing and Claimant retained a residual functional capacity ("RFC") to allow him to perform his past relevant work as a security guard.

### Errors Alleged for Review

Claimant asserts the ALJ committed error requiring reversal in (1) failing to perform a proper analysis of Claimant's treating physician's opinion; (2) failing to perform a proper credibility analysis; and (3) failing to discuss probative evidence in the record which conflicted with the ALJ's findings.

### Treating Physician's Opinion

Claimant argues the ALJ failed to properly analyze the opinion

4

of her treating physician, Dr. Rovner. Claimant sustained an injury to his back while unloading a heavy piece of equipment from a trailer on September 15, 1995 which eventually led him seeking emergency treatment due to increasing pain. (Tr. 154). Claimant was attended by Richard A. Nolan, M.D., an orthopedic surgeon, beginning January 8, 1997 and continuing through March 3, 2000. (Tr. 161-223). Claimant complained of pain at the LS junction on the midline and right junction extending less into the left. The pain extended to the right, lower extremity and down the thigh to the right foot. Cold and damp weather and remaining in any position for a prolonged period of time aggravated the pain. (Tr. 222). Claimant took Lortab for the pain. Dr. Nolan found decreased lordosis with concavity of the lower lumbar spine to the left and the thoracolumbar spine to the right with the right hemipelvis elevated approximately 2 cm. He also found definite tenderness to the pelvic brim and junction to percussion. He noted mild right sciatic notch tenderness with no left sciatic notch tenderness. Id.

Claimant underwent a myelogram and enhanced CT in May of 1997. (Tr. 211). Dr. Nolan concluded Claimant suffered from a disc herniation at L5-S1 extending to the right neural foramina. Claimant was approved for laser decompression at L5-S1 and potentially L4-5. (Tr. 209-210).

On June 7, 1997, Claimant began seeing Joan E. Erwin, Ph.D.,

a clinical psychologist. She diagnosed Claimant in Axis I: Major Depression, single episode, severe with psychotic features, Generalized Anxiety Disorder; Axis II: Undetermined; Axis III: Physical Symptoms, including back pain, muscle spasms, abdominal pain, weight loss, sleep disturbances, poor memory. (Tr. 153-160). Surgery was delayed while Claimant received medications for his psychological problems. Discectomy surgery was performed on Claimant. On July 28, 1997, Claimant was again seen by Dr. Erwin who noted excellent progress after a successful surgery.

Claimant was attended by Dr. Nolan in September of 1997, reporting continued lower back pain radiating to his right leg and depression. He was again placed on Lortab. (Tr. 207-208). This condition continued through 1997 and 1998 with periods of improvement and regression in both his physical and mental states.

On April 6, 2000, Claimant began seeing Robert A. Rovner, M.D., an orthopedic surgeon. (Tr. 323). Dr. Rovner noted a narrowing of L5-S1 space, a right side disk herniation at that level and a bulge at S1-S2. He diagnosed Claimant with lubosacral degenerative disk disease status post laser surgery and a rudimentary S1-S2 disk with bulging and recommended an MRI. (Tr. 324-325).

An MRI was performed on Claimant. Dr. Rovner attended Claimant on May 1, 2000. He found the MRI showed severe lumbosacral degenerative disk disease. (Tr. 321). Conservative

6

treatment was found to have failed.  Id.

On September 18, 2000, Claimant was hospitalized for the purpose of undergoing surgery.  Over the next week, Claimant underwent three separate surgical procedures involving anterior and posterior fusion of the L5-S1 level with decompression and the installation of hardware.  (Tr. 236-241).

Claimant continued to make progress in his condition, with Dr. Rovner acting as his primary treating physician through January of 2001.  (Tr. 262, 300, 303, 306, 309, 312).  On March 9, 2001, Claimant began complaining of increasing lower back pain, without obvious explanation.  (Tr. 297).  An examination by Dr. Rovner revealed limited range of motion of the lumbar spine.  However, Claimant was otherwise found to be doing well with x-rays showing good position of the spinal hardware and satisfactory fusion of the bone graft anteriorly.  Id.

On June 28, 2001, Claimant again saw Dr. Rovner complaining of continued back pain due to the retained posterior spinal hardware.  Removal of the hardware was considered.  Dr. Rovner posited that after Claimant's condition had stabilized after a period of temporary disability of six to twelve weeks, he would be expected to return to some type of gainful employment.  (Tr. 292).

In an examination on September 4, 2001 by Dr. Rovner, Claimant complained of persistent pain, accompanied by tenderness in the lumbar spine, limitations to his range of motion secondary to pain.

Dr. Rovern offered to remove the hardware which he concluded may be the cause of the pain. (Tr. 288-289).

On October 23, 2001, Claimant underwent surgery where the pedicle screws were removed from his back and the lumbar fusion was augmented. (Tr. 266-269). In the follow-up visits to Dr. Rovner on October 26, 2001, November 2, 2001, and December 14, 2001, Claimant complained of low back pain but continued to make progress. (Tr. 277, 280, 283).

On January 18, 2002, Claimant saw Dr. Rovner, who concluded Claimant had reached a point of maximum medical improvement. Claimant continued to complain of low back pain, left hip pain, bilateral thigh pain, with a sitting tolerance of 20 minutes and a relative intolerance for lifting and bending. (Tr. 273). Lumbar range of motion was found to be 10 degrees extension, 20 degrees lateral bending to the left and right, and 60 degrees flexion at the hips with forward reach to the knees. Dr. Rovner recommended Claimant be precluded from work that involves excessively heavy lifting, repetitive bending, or sitting for greater than 20 minutes. (Tr. 274).

Thereafter, Claimant moved to Oklahoma. In September of 2002, he received treatment from the Wewoka PHS Indian Hospital, complaining of back pain. Through September of 2003, Claimant received the medication Tylenol #3, Flexeril, Percocet, and Vicodin. (Tr. 360-364).

8

After many visits to the Indian Hospital, on June 30, 2005, Claimant underwent a lumbar MRI which revealed bulging and a prominent annulus fibrosis tear with mild to moderate bilateral facet joint hypertrophy and mild bilateral foraminal narrowing at the L3-L4 level as well as mild right neuroforaminal narrowing due to the facet joint hypertrophy at the L4-L5 level. (Tr. 394). Claimant was also diagnosed with depression and needed medication from a psychologist in August of 2005. (Tr. 422).

In his decision, the ALJ found Claimant to be capable of his light past relevant work as a security guard, as well as light or sedentary, unskilled jobs of cash clerk II, vending machine attendant, food and beverage order clerk, and addressing clerk. (Tr. 20-21). He found Claimant suffered from the severe impairment of lumbar degenerative disk disease (Tr. 19, 21). However, the ALJ found Claimant could perform several light jobs and his RFC allowed him to perform a full range of sedentary work. (Tr. 20-21).

With regard to Dr. Rovner, the ALJ failed to reference his extensive medical records and findings at all. Defendant states Dr. Rovner's opinion is irrelevant because his last finding was made in January of 2002 and, therefore, "lacks significance" since it preceded Claimant's relevant period. The ALJ is required to consider every medical opinion received, even if the medical observations were from an earlier period, prior to the adjudicated period. Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004);

9

20 C.F.R. §§ 416.920(a)(3) and 416.927(d).  The failure to consider such evidence, even outside of the relevant period, constitutes reversible error.  <u>Hamlin</u>, supra at 1215-16.  *Also see*, <u>Lackey v. Barnhart</u>, 2005 WL 758797, at 3 (10th Cir.)(unpublished); <u>Cooper v. Barnhart</u>, 2007 WL 461476, at 5 (D. Kan.)(unpublished).

Moreover, the ALJ failed to employ the reasoning now provided by Defendant for the rejection of Dr. Rovner's opinions in his written decision.  Any time an ALJ rejects the opinion of a treating physician or fails to give it controlling weight, he must provide substantiation for that rejection.  An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record."  <u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1300 (10th Cir. 2003). (quotation omitted).  "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight."  <u>Id</u>.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527."  <u>Id</u>. (quotation omitted).  The factors reference in that section are:  (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the

10

treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

The ALJ's opinion lacks any explanation for the rejection of Dr. Rovner's opinion. Even considering the post-decisional reasoning of Defendant, Dr. Rovner's opinions should have been considered. The matter must, therefore, be remanded for further findings consistent with the prevailing case authority.

Because consideration of this issue is dispositive of this review, this Court declines to discuss the other stated bases

proffered by Claimant in this appeal. On remand, however, Defendant should consider Claimant's other arguments in the re-hearing and decision made on Claimant's application.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Order.

DATED this 5th day of November, 2007

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE